UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DRS. LE AND MUI, FAMILY MEDICINE, A MEDICAL CORPORATION | CIVIL ACTION |
| VERSUS | NO:     06-10015 |
| ST. PAUL TRAVELERS a/k/a UNITED STATES FIDELITY & GUARANTY CO. | SECTION: "A" (4) |

## ORDER

On October 16, 2007, the Court granted as unopposed a Motion to Compel Discovery Responses (R. Doc. 9), filed by the Defendant. (R. Doc. 15.) In the motion, the Defendant sought the award of reasonable attorney's fees associated with the motion. Thus, the Court ordered the Defendant to file a motion to fix attorney's fees into the record. Thereafter, the Defendant filed a **Motion to Fix Attorneys' Fees and Costs (R. Doc. 20)** and attached (1) two affidavits and (2) itemized fee entries for the services rendered by the Defendant's counsel, Joseph P. Guichet ("Guichet") and Brad E. Harrigan ("Harrigan"). In opposition, the Plaintiff filed a Response to Defendant's Motion to Fix Attorney's Fees (R. Doc. 32).

In total, the Defendant seeks the recovery of $1,392.50 in attorney's fees. According to the affidavit submitted by Harrigan, he expended 6.5 hours in connection with the motion at a rate of $190.00, for a resulting total of $1,235.00. (R. Doc. 20-3, Ex. B.) Similarly, in the affidavit submitted by Guichet, he expended 0.7 hours in connection with the discovery dispute, at a rate of $225.00, for a total of $157.50. (R. Doc. 20-3, Ex. A.) The Defendant did not request or provide

documentation for any costs expended, therefore, the Court will not award costs in connection with the motion.

The Plaintiff opposes the Defendant's motion, arguing that the motion was straightforward and "relatively simple." (R. Doc. 32, p. 2.) Furthermore, the Plaintiff maintains that there were no novel or difficult questions presented and there was little legal skill involved in the filing of the motion to compel. Consequently, it asserts that the hourly rates and the time billed by the Defendant's counsel are excessive.

## I.    **Standard of Review**

The Supreme Court has indicated that the "lodestar" calculation is the "most useful starting point" for determining the award of attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. The lodestar is presumed to yield a reasonable fee. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). After determining the lodestar, the court must then consider the applicability and weight of the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1] The court can make upward or downward adjustments to the lodestar figure if the *Johnson* factors warrant such modifications. *See Watkins v. Fordice*, 7 F.3d 453 (5th Cir. 1993). However, the lodestar should be modified only in exceptional cases. *Id.*

After the calculation of the lodestar, the burden then shifts to the party opposing the fee to

---

[1] The twelve *Johnson* factors are (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-719.

contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended "by affidavit or brief with sufficient specificity to give fee applicants notice" of the objections. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

## III. Analysis

### A. Calculating a Reasonable Hourly Rate

Attorney's fees must be calculated at the "prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates. *See NAACP v. City of Evergreen,* 812 F.2d 1332, 1338 (11th Cir. 1987). Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896 n. 11. However, mere testimony that a given fee is reasonable is not satisfactory evidence of a market rate. *See Hensley*, 461 U.S. at 439 n. 15.

Rates may be adduced through direct or opinion evidence as to what local attorneys charge under similar circumstances. The weight to be given to the opinion evidence is affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988); *see also White v. Imperial Adjustment Corp.*, No. 99-03804, 2005 WL 1578810, at *8 (E.D.La. Jun. 28, 2005) (recognizing that attorneys customarily charge their highest rates only for trial work, and lower rates should be charged for routine work requiring less extraordinary skill and experience).

Where "an attorney's customary billing rate is the rate at which the attorney requests the lodestar to be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed.  When that rate is not contested, it is *prima facie* reasonable."  *La. Power and Light*, 50 F.3d at 328.

Here, the Plaintiff seeks the recovery of $1,392.50 in attorney's fees for 7.2 hours of work on the motion, at hourly rates of $190.00 and $225.00.  In support of the hourly rates, the Plaintiff submits the affidavits of its attorneys, Guichet and Harrigan.

According to Harrigan's affidavit, he received his Juris Doctorate from Boston University, School of Law in 2000 and has been practicing law for over seven years.  (R. Doc. 20-3, Ex. B.) Currently, he is an associate with Lugenbuhl, Wheaten, Peck, Rankin & Hubbard.  (R. Doc. 20-3, Ex. B.)  Furthermore, he has served as one of the counsel of record in the subject litigation since the inception and has performed a total of 6.5 hours of work in connection with the motion to compel. (R. Doc. 20-3, Ex. B.)  Harrigan asserts that his hourly billing rate is $190.00 an hour, which is his standard billing rate charged to all of his clients in similar cases.  (R. Doc. 20-3, Ex. B.) Furthermore, he contends that his billing rate is commensurate with the rates of other local attorneys with similar education, background, and experience.  (R. Doc. 20-3, Ex. B.)

According to Guichet's affidavit, he received his Juris Doctorate from Tulane University, School of Law in 1996 and has been exclusively practicing insurance defense for seven years.  (R. Doc. 20-3, Ex. A.)  Currently, he is a shareholder at the law firm of Lugenbuhl, Wheaten, Peck, Rankin & Hubbard.  (R. Doc. 20-3, Ex. A.)  Furthermore, he has been involved in the subject litigation since its inception and has performed 0.7 hours of work in connection with the motion to compel. (R. Doc. 20-3, Ex. A.)  Guichet asserts that his hourly billing rate is $225.00 an hour, which

is his standard billing rate charged to all of his clients in similar cases.  (R. Doc. 20-3, Ex. A.) Furthermore, he contends that his billing rate is comparable to the rates of other local attorneys with similar education, background, and experience.  (R. Doc. 20-3, Ex. A.)

Despite these details in the affidavits, neither Harrigan nor Guichet provide any other information regarding the rates actually billed and paid by attorneys in similar lawsuits. Furthermore, the Plaintiffs contest the rate as "unusually high" given the straightforwardness of the motion to compel.  (R. Doc. 32, p. 1.)

Here, Harrigan's rate of $190.00 and Guichet's rate of $225.00 are above the range of the prevailing market rates. *See Lytal Enterprises, Inc. v. Newfield Exploration Co.*, No. 06-00033, 2006 WL 3366128 at *6-7 (E.D. La. Nov. 17, 2006)(identifying the range of attorney's fees awarded in cases before the Eastern District of Louisiana, and specifically awarding a rate of $175.00 an hour to a senior-level associate, who had graduated from law school seven years ago, for work on a motion to compel).  Based on the prevailing market rates, the Court concludes that a rate of $175.00 is appropriate for Harrigan's work on the motion and $200.00 is appropriate for Guichet's work on the motion.

### B. Determining the Reasonable Hours Expended

The party seeking attorney's fees bears the burden of establishing the reasonableness of the fees by submitting adequate documentation and time records of the hours reasonably expended and proving the exercise of "billing judgment."  *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir.1997); *Walker,* 99 F.3d at 770.  Attorneys must exercise "billing judgment" by excluding  time that is unproductive, excessive, duplicative, or inadequately documented when seeking fee awards. *Id.* (citing *Walker v. United States Dep't of Housing & Urban Dev.,* 99 F.3d 761, 769 (5th

Cir.1996)). Specifically, the party seeking the award must show all hours actually expended on the case but not included in the fee request. *Leroy v. City of Houston*, 831 F.2d 576, 585 (5th Cir. 1987). Hours that are not properly billed to one's client also are not properly billed to one's adversary. *Hensley*, 461 U.S. at 434. The remedy for failing to exercise billing judgment is to reduce the hours awarded as a percentage and exclude hours that were not reasonably expended. *Id.* Alternatively, this Court can conduct a line-by-line analysis of the time report. *See Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642 (5th Cir. 2002).

The fee entries submitted by the Defendant's counsel for the legal services that they rendered in conjunction with the motion to compel does not mention any hours expended but not billed to the client. It is therefore presumed that the Defendant's counsel did not exercise billing judgment. However, as indicated by the above case law, the Court may also conduct a line-by-line analysis of the fee entries made by the Defendant's counsel for work performed for the motion.

### 1. Excessive Time Entries

#### A. Telephone Call and Letter Regarding Outstanding Discovery

On July 31, 2007, Harrigan asserted that he spent 0.4 hours total conversing with the Plaintiff's counsel over the telephone and drafting a letter to the Plaintiff regarding the outstanding discovery. In a one-paragraph letter Harrigan wrote on July 31, 2007, he indicated that based on his telephone conversation, he understood that the Plaintiff possessed the responses to the discovery requests and that the Plaintiff's counsel would contact him in a day or two regarding the responses. The July 31, 2007 letter consisted of three full sentences.

In light of the brevity of the letter and Harrigan's seven years of legal experience, the Court deducts 0.2 hours from Harrigan's July 31, 2007 entries as excessive. The Court concludes that 0.2

hours is a reasonable amount of time for Harrigan call opposing counsel and draft a one paragraph letter indicating that he expects to hear back from counsel regarding the forthcoming discovery responses.

### B. Setting the Discovery Conference

On August 6, 2007, Harrigan indicates that he spent 0.4 hours drafting the letter setting a discovery conference. (R. Doc. 20-3, Ex. C.)  Later, on August 8, 2007, he spent an additional 0.1 hours of work revising the letter. (R. Doc. 20-3, Ex. C.)  However, the letter regarding the discovery conference that was ultimately sent to the Plaintiff contained only two paragraphs and merely indicated that (1) the Defendant had not received the Plaintiff's response to the discovery and (2) thus scheduled a discovery conference for August 15, 2007, at 10:00 a.m.  (R. Doc. 9-5, Ex. C.)  Based on the brevity and simplicity of the letter and the lack of any substantive legal analysis, the Court finds that a total of 0.5 hours spent on the letter is excessive.  The Court finds that 0.2 hours is sufficient for an attorney with Harrigan's experience to draft and revise such a letter.  Therefore, the Court deducts 0.3 hours from Harrigan's August 6 and 8, 2007 entries.

Additionally, Guichet also requests fees for an interoffice conference held with Harrigan on August 6, 2007, also regarding the setting of the discovery conference.  The scheduling of a discovery conference should not involve the work of multiple attorneys.  The 0.1 hours Guichet spent conferring with Harrigan regarding the discovery conference is excessive because the Defendant will already be awarded 0.2 hours for Harrigan's work in drafting and revising the letter to set the discovery conference.  Therefore, the Court strikes Guichet's fee entry on August 6, 2007, regarding the scheduling of a discovery conference.

## C. Drafting and Revising the Motion to Compel

On August 31, 2007, Harrigan asserts that he spent 2.0 hours drafting the motion to compel the production of documents. (R. Doc. 20-3, Ex. C.) Shortly thereafter, on September 4, 2007, he then engaged in an 0.1 hour-long in telephone discussion with the Plaintiff's counsel regarding the motion and spent another 0.1 hours "strategiz[ing]" the motion. (R. Doc. 20-3, Ex. C.) On September 6, 2007, he spent an additional 1.5 hours drafting the motion. (R. Doc. 20-3, Ex. C.) The following day, on September 7, 2007, he then revised the motion for 0.3 hours. (R. Doc. 20-3, Ex. C.) Finally, on September 26, 2007, he conferred with others regarding the motion for 0.3 hours. (R. Doc. 20-3, Ex. C.)

The Defendant's motion to compel was not a motion to test the sufficiency of the Plaintiff's discovery responses. The Defendant propounded discovery and the Plaintiff did not answer. The motion was not difficult nor did it involve novel or unique issues of law or fact. Rather, it was simply a motion to compel responses that were required under the Rules.

The Defendant's motion and supporting memorandum reflect the lack of difficulty of the motion. In the motion and accompanying documents, the Defendant cites to no legal authority in support of its position. Furthermore, the Defendant conducts no substantive legal analysis, but merely restates the facts. Without the captions, headers, signature lines, and certificates of service, the motion to compel and supporting memorandum would only consist of a combined total of two double-spaced pages.

In light of Harrigan's experience, the simplicity of the motion, and the ultimate work product, the Court concludes that 2.0 hours is a more than reasonable amount of time to draft and revise the motion to compel. Therefore, the Court excludes Harrigan's fee entries on September 4,

6, 7, and 26, 2007, and thus subtracts 2.3 hours from Harrigan's entries for drafting, revising, and conferring about the motion to compel.

### 2. **Block-Billed Entries**

According to the fee entries, on August 27, 2007, Guichet participated in an interoffice conference with Harrigan "regarding discovery and experts." (R. Doc. 20-3, Ex. C.) Guichet also includes a fee entry for his services in reviewing and revising the motion to compel and "a possible motion to continue in light of [the] failure [of the Plaintiff] to respond to discovery." (R. Doc. 20-3.) On September 28, 2007, Guichet spent 0.1 hours preparing for and leaving a message with opposing counsel regarding the motion to compel and "other issues." (R. Doc. 20-3, Ex. C.) Each of these fee entries include services beyond the subject motion to compel, and are therefore "block-billed."

The practice of block-billing is disfavored because it is not the province of the Court to approximate how much time was spent on the motion to compel in block-billed entries. *See Cristancho v. National Broadcasting Co., Inc.,* 117 F.R.D. 609, 611 (N.D. Ill. 1987) (denying fees because of substantial block-billing); *In re Chicago Lutheran Hospital Assn.*, 89 B.R. 719, 735 (Bankr. N.D. Ill. 1988) (denying payment for all block-billed entries).

In Guichet's fee entry for August 27, 2007, in addition to rendering services for the motion to compel, he also discussed "experts" with Harrigan at that time. (R. Doc. 20-3, Ex. C.) Furthermore, in his September 6, 2007 entry, Guichet attempts to claim fees not only for the motion to compel, but also for "a possible motion to continue." (R. Doc. 20-3, Ex. C.) Finally, on September 28, 2007, Guichet indicates that he prepared for and left a message to opposing counsel regarding both the motion to compel and "other issues." (R. Doc. 20-3, Ex. C.)

This Court will not estimate how much time Guichet spent working on the motion to compel

versus the other services that are amalgamated within these fee entries. This Court only awarded fees arising from the motion to compel, not any fees in connection with experts, a possible motion to continue, or "other issues." Accordingly, the Court excludes the fee entries made by Guichet on (1) August 27, 2007, (2) September 6, 2007, and (3) September 28, 2007, therefore deducting 0.5 hours from Guichet's total.

### 3.     **Duplicative Entries**

On September 26, 2007, Harrigan claims that he expended 0.3 hours to "confer regarding [the] motion to compel." (R. Doc. 20-3, Ex. C.) Similarly, also on September 26, 2007, Guichet asserts that he spent 0.1 hours in an interoffice conference with Harrigan, discussing the motion to compel and "extending deadlines in light of failure to respond to discovery." (R. Doc. 20-3, Ex. C.) While Guichet's entry block-bills his work on the motion to compel with his discussion on extending discovery deadlines, more disconcertingly, it is duplicative of Harrigan's entry on September 26, 2007.

When a party chooses two attorneys to represent it in a lawsuit, the opposing party is not required to pay for duplicative work among the attorneys. *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996). Because Harrigan has conducted the majority of work on the subject motion to compel, the Court will subtract any duplicative entries and time from Guichet's billing records.

Here, both Harrigan and Guichet assert that they incurred fees for their activities in conferring about the motion to compel. Based on the fee entries, it appears that these entries are duplicative. Accordingly, the Court deducts Guichet's fee entry for 0.1 hours on September 26, 2007 from the total fees requested.

### C. Adjusting the Lodestar

As indicated above, after the lodestar is determined, the Court may then adjust the lodestar upward or downward depending on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974). To the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required. *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998). The Court has carefully considered the *Johnson* factors and concluded that they do not warrant an upward or downward departure here. The Court has already considered the *Johnson* elements in its line-by-line determination of the lodestar.

In total, the Court has deducted 2.8 hours from Harrigan's fee entries and 0.7 hours from Guichet's fee entries. Therefore, after the deductions, the Court awards a total of 3.7 hours for work performed by Harrigan at an hourly rate of $175.00, for a total of $647.50.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the **Defendant's Motion to Fix Attorneys' Fees and Costs (R. Doc. 20)** is **GRANTED**. The Court finds that a total fee of $647.50 is reasonable in the matter here.

**IT IS FURTHER ORDERED** that the Plaintiff satisfy its obligation no later than 20 days of the signing of this Order.

New Orleans, Louisiana, this 19th day of December 2007

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**